**272**  MATTER OF ADIRONDACK POWER & L. CORP. *v.* P. S. COMM.

Third Department, January, 1925.                    [Vol. 211

In the Matter of the Application of ADIRONDACK POWER AND
LIGHT CORPORATION, Petitioner, for a Certiorari Order against
PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK,
Respondent.

Third Department, January 7, 1925.

Gas and electricity — rates — certiorari to review action of Public Service
Commission in fixing rate base and rates for gas — present reproduction
cost of plant must be considered in fixing rate base — determination
of Public Service Commission annulled for failure to consider repro-
duction cost — rate base should not be fixed solely on basis of 1910
appraisal plus addition to fixed capital since then — in fixing rate of
return consideration should be given to low rate of return previously
allowed.

The determination of the Public Service Commission in fixing the rate base for
the purpose of determining the rates that should be charged by the petitioner
for manufactured gas must be annulled, since it appears that the Commission
failed to take into consideration the present reproduction cost of the plant of
petitioner in determining present value.

The rate base should not be fixed solely on the basis of an appraisal made in 1910
plus the addition of fixed capital since that time, for that basis leaves out of
consideration any readjustments to present values particularly as to the
properties covered in the 1910 appraisal.

In fixing the rate to be charged for gas, the Public Service Commission should
take into consideration the fact that for some time prior to the present pro-
ceedings, the petitioner has been compelled to accept a low return on invest-
ment because of the inadequate rates heretofore fixed by the Public Service
Commission.

CERTIORARI ORDER granted out of the Supreme Court at the
Albany Special Term on the 18th day of August, 1923, directed
to the Public Service Commission of the State of New York, com-
manding it to certify and return to the office of the clerk of the
county of Albany all and singular its proceedings had in establishing
a schedule of rates to be charged by the relator for gas sold to the
inhabitants of the city of Saratoga Springs, N. Y.

On July 28, 1921, the relator filed a petition with the Commission
for an increase of rates for gas sold in said city. Hearings were had
and on January 4, 1923, the Commission made and entered an order
providing for a schedule with specified " block " rates to be charged.
On January 27, 1923, the relator filed with the Commission a verified
petition asking for a rehearing. Such rehearing was granted and
the proceeding was reopened. On May 3, 1923, the Commission
made and entered a further order denying the petition for the
modification and confirming the order made on January 4, 1923.
On August 18, 1923, an order for certiorari was granted upon which
the matter comes here.

The order of January 4, 1923, provided that a schedule should be filed yielding an average rate of $1.70 per 1,000 cubic feet.   Two opinions were written by the Commission on the original hearings; one by Commissioner Semple, with Chairman Prendergast concurring, and with Commissioner Blakeslee concurring in all respects except as to the directed rate, and one by Commissioner Pooley, with Commissioner Van Voorhis concurring, and with Commissioner Blakeslee concurring in the result.   Commissioner Semple determined in his opinion that the relator should be required to file a schedule designed to realize an average rate for gas sold of $1.75 per 1,000 cubic feet.   His opinion also determined that the rate base should be $370,447.17 while the opinion of Commissioner Pooley recommended a rate base of $300,000 and a rate for gas sold of $1.70 per 1,000 cubic feet.   (28 State Dept. Rep. 599.)

*James F. Mc Kinney* [*Daniel F. Imrie* of counsel], for the petitioner.

*Charles G. Blakeslee,* for the respondent.

*Sheridan P. Wait* [*William E. Bennett* of counsel], for the City of  Saratoga Springs, N. Y.

HINMAN, J.:

The present increased cost of construction must be considered in determining the value of the property, and due weight must be given to such present reproductive cost.   The Supreme Court has refused to adopt the prudent investment cost theory.   (*State of Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission of Missouri,* 262 U. S. 276; *Bluefield Waterworks & Improvement Co.* v. *Public Service Commission of West Virginia,* Id. 679; *Monroe Gaslight & Fuel Co.* v. *Michigan Public Utilities Commission,* 292 Fed. 139.)   Concededly the Commission has ignored present (1921) reproductive costs of the relator's properties in determining their present values and has adopted a rate base which only squares with reproductive cost based on ten years' average prices covering the ten-year period prior to 1921, less depreciation. The Commission was divided as to the rate base to be allowed. We are assuming the higher one to have been adopted by a majority of the Commission, namely, $370,000, although the divergent opinions of the Commissioners leave the question in doubt.   Upon this basis we find that the Commission totally ignored the only testimony in the record giving cost of reproduction based upon present (1921) prices.   One witness, at 1921 prices, testifies to present reproductive cost new at $842,000 and less depreciation at $730,000.   Another witness testifies to present reproductive cost

**274** Matter of Adirondack Power & L. Corp. *v.* P. S. Comm.

Third Department, January, 1925. [Vol. 211

new at $732,000 and less depreciation at $664,000. The identical properties at ten years' average prices were valued by the latter witness as new at $456,000 and less depreciation at $414,000. This vast difference between 1921 prices and ten years' average prices cannot be wholly ignored upon the basis that prices of 1921 were as abnormal as such difference indicates. Of course the valuation of an old property such as the relator's does not require the acceptance of cost to reproduce new 1921 figures but even if we adopt the theory that the above-mentioned witnesses applied a too low percentage of depreciation, the valuation found must accord with some other evidence in the case tending to prove present value. If we accept the depreciation of twenty-four and one-tenth per cent used in the Stone & Webster appraisal of 1910 and apply it to the proofs of $842,000 or $732,000 reproductive costs new in 1921, we would have a reproductive cost less depreciation of $640,000 or $556,000, either of which figures is vastly more than the Commission has allowed. Counsel for the city has suggested that at a hearing in 1918 the company presented an exhibit in which thirty-six per cent was deducted for depreciation. Applying this thirty-six per cent of depreciation to the $842,000 and $732,000, we get respectively about $538,000 and $468,000 as the depreciated value on a reproductive cost basis 1921. It is conceded that Commissioner Semple deducted thirty per cent for depreciation, which, deducted from the $842,000 and $732,000 gives respectively about $589,000 and $512,000. The $370,000 rate base adopted by the majority of the Commission consisted of only $305,500 for fixed capital other than land, $11,000 for land, $25,000 for working capital, $27,881 for organization charges. This vast discrepancy, even applying the highest percentages of depreciation found in the record, demonstrates that due weight has not been given to the only testimony in the case giving present reproductive costs, in determining present value. The counsel for the city has dwelt upon the depreciated condition of some of the company's properties. We must assume that the witnesses and the Commission have taken this situation into consideration in fixing the percentage of depreciation to which we have referred.

Moreover, it is sought to defend the rate base found by Commissioner Semple by reference to the Stone & Webster appraisal of 1910 plus the additions to fixed capital since that time. This totally leaves out of consideration any readjustments to present 1921 values, particularly as to the properties covered in the 1910 appraisal. The same is true of the values testified to by the city's engineer based on his views of original cost. The same may be said of figures based upon a United States Circuit Court appraisal

of 1911.   The United States Supreme Court has refused to sanction the investment cost theory in its most recent pronouncements and has required that due weight be given to present reproductive costs notwithstanding present high price levels.   Future rates cannot be fixed without due consideration of present values and present values cannot be determined by ignoring present cost figures.   And if investment costs are to be considered in this case, there are figures of investment costs to date as shown on the books of the company which seem to indicate that a much larger amount has actually been spent during the history of the company for construction than has been allowed by the Commission as a rate base.

We have been unable to determine to our satisfaction what rate of return has been allowed by the Commission.   The same is true as to the amount allowed for annual depreciation reserve. This has been due to the divergent views expressed in their two opinions and the failure of the Commission to present any findings upon which the majority reached their conclusion fixing a gas rate of one dollar and seventy cents per 1,000 cubic feet.   If there is any present necessity of heavy expenditures for replacements, the evidence indicates that the responsibility is not wholly chargeable to inefficient company management, but that much is due to the past low rates allowed by the present and former Commissions. Commissioner Semple has demonstrated in his opinion that a one dollar and seventy-five cent rate will produce an eight per cent return on the rate base of three hundred and seventy thousand dollars.   We are given to understand that the one dollar and seventy cent rate allowed by the majority will, on that basis, produce not to exceed seven and one-tenth per cent return.   Even assuming the rate base adopted as fair and that the one dollar and seventy cent rate will yield to the company the amount for annual depreciation reserve allowed in Commissioner Semple's opinion and seven and one-tenth per cent return on that rate base, we think such rate of return under the circumstances of this case may well be considered inadequate, in view of the holding of the United States Supreme Court in *Bluefield Waterworks & Improvement Co.* v. *Public Service Commission of West Virginia* (*supra*).   In that case the United States Supreme Court referred to the fact that the company had received a rate of return that was very low through a long period up to the time of the inquiry by the Commission and that such fact should be taken into consideration and a higher rate allowed in order to be fair.

For these reasons the determination should be annulled, with fifty dollars costs and disbursements, and the matter remitted to

the Commission for further consideration in accordance with these views, with. leave to reopen and take further evidence, if desired.

All concur.

Determination annulled, with fifty dollars costs and disburse-- ments, and proceeding remitted to the Commission, with leave to reopen and take further evidence, if desired.