108    Matter of Peoples Gas & El. Co. v. Pub. Serv. Comm.

Third Department, September, 1925.    [Vol. 214

In the Matter of the Application of Peoples Gas and Electric Company of Oswego, Petitioner, for a Certiorari Order against Public Service Commission of the State of New York, Respondent.    (Electric Rate Case — Case No. 966.)

In the Matter of the Application of Peoples Gas and Electric Company of Oswego, Petitioner, for a Certiorari Order against Public Service Commission of the State of New York, Respondent.    (Gas Rate Case — Case No. 1010.)

Third Department, September 10, 1925.

Gas and electricity — rates must allow reasonable return — reproduction cost of plant must be considered in determining value of property — uncontradicted evidence by petitioner showed reproduction cost — Public Service Commission fixed value much below reproduction cost — error for Commission not to give predominating force to testimony as to reproduction cost — evidence justified finding as to going value.

Rates for gas and electricity fixed by the Public Service Commission must be high enough to allow a reasonable return on the value of the property used in the production thereof.

In determining the value of the property used in the production of gas and electricity, the reproduction cost of the plant must be considered by the Public Service Commission, and any determination which fails properly to appraise such reproduction cost is erroneous.

Accordingly, the decision by the Public Service Commission, fixing the rates for gas and electricity that could be charged by the petitioner, was erroneous, since it appears that the value placed upon the petitioner's property by the Commission was very much less than the uncontradicted evidence by petitioner's witness showed the reproduction cost to be, and since it appears that the only evidence by the city of Oswego concerning the value of the plant was given by a witness who testified as to the normal reproduction cost, which, in effect, was nothing more than the original cost plus the cost of additions to the plant.

Going value of a plant must be taken into consideration in fixing rates, and the Commission was in error when it held that there was no evidence in this case as to the going value of the petitioner's plant.

Certiorari order granted out of the Supreme Court at the Schoharie Special Term on the 29th day of March, 1924, in the first above-entitled proceeding, directed to the Public Service Commission of the State of New York, commanding it to certify and return to the office of the clerk of the county of Albany all and singular its proceedings had in fixing rates for electricity in the city of Oswego.

Certiorari order granted out of the Supreme Court at the Schoharie Special Term on the 29th day of March, 1924, in the second above-entitled proceeding, directed to the Public Service Commission of the State of New York, commanding it to certify and return to the office of the clerk of the county of Albany all

and singular its proceedings had in fixing rates for gas in the city of Oswego.

The opinions rendered by the Public Service Commission are reported in *Matter of Peoples Gas & Electric Co., Case No. 966* (30 State Dept. Rep. 556) and in *Matter of Peoples Gas & Electric Co., Case No. 1010* (Id. 580).

*Mizen & Mizen [N. F. Towner* and *Elton H. Beals* of counsel], for the petitioner.

*H. M. Chamberlain,* for the respondent Public Service Commission.

*Joseph T. McCaffrey [Udelle Bartlett* of counsel], for the respondent City of Oswego.

COCHRANE, P. J.:

The petitioner supplies gas and electricity in the city of Oswego and adjacent territory. It has separate departments for gas and electricity and keeps its accounts for these departments separate and distinct. The Commission has made separate orders, one fixing the rate to be charged for electricity and the other fixing the rate to be charged for gas. These two orders are under review in this proceeding. The petitioner attacks them claiming that the rates as fixed by the Commission are too low.

It is now too well established to admit of discussion that a public utility is entitled to a reasonable return on the value of its property used in the public service at the time of the inquiry. (*Willcox* v. *Consolidated Gas Co. of New York,* 212 U. S. 19; *State of Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission of Missouri,* 262 id. 276; *Bluefield Water Works & Improvement Co.* v. *Public Service Commission of West Virginia,* Id. 679; *Matter of Pennsylvania Gas Co.* v. *Public Service Commission,* 211 App. Div. 253; *People ex rel. Kings County Lighting Co.* v. *Willcox,* 210 N. Y. 479; *Smyth* v. *Ames,* 169 U. S. 466; *Minnesota Rate Cases,* 230 id. 352.) In determining the value of the property due weight must be given to its cost of reproduction and any determination which fails to properly appraise such reproduction cost is erroneous. (*Bluefield Water Works & Improvement Co.* v. *Public Service Commission of West Virginia, supra; Matter of Adirondack Power & Light Corporation* v. *Public Service Commission,* 211 App. Div. 272; *Georgia Railway & Power Co.* v. *Railroad Commission of Georgia,* 262 U. S. 625.) These principles the Commission recognized but has failed to apply.

In the consideration of the case by the Commission the property of the petitioner was divided into three classes, viz., general property used in both the electric and gas service; electric property used

exclusively in electric service, and gas property used exclusively in gas service. The general property was allocated seventy per cent to the electric property and thirty per cent to the gas property. Both the petitioner and the city introduced expert testimony as to the value of the property. Mr. Cheney for the petitioner gave an estimate of its original cost and also of its reproduction cost less depreciation. The city relied on the testimony of Mr. Hine who seems to have been competent to express an opinion as to the value of the property. The city, however, did not attempt to controvert the testimony as to reproduction cost as given by Mr. Cheney. Instead thereof Mr. Hine followed a certain method of what he called " normal reproduction cost." This testimony was properly described by the Commission as follows: " Mr. Hine's normal reproduction cost is rather a misleading term. What he intends by that term is the cost of the first installation and the cost of additions to the plant as required by growth of business at prudent and reasonable prices. It is not a reproduction of the plant as at the present time but a reproduction as it has grown from its first installation at prices and costs prevailing at the time extensions and additions were made. It does not materially differ from Mr. Cheney's original cost except as to related overheads." Now let us consider briefly how this testimony was considered and applied by the Commission. The following figures are given by the Commission as the basis of its decision. In respect to the general property Cheney estimated its original cost at $99,521.45 and its reproduction cost at $181,406.14 which he reduced for depreciation to $149,593.59. Mr. Hine on the basis of what he termed " normal reproduction cost " fixed the value of the general property at $71,474.56. The Commission found its value to be $89,014.82, or somewhere between the estimated cost price of the two experts for the relator and city respectively. It is clear that very little if any consideration was given to Cheney's testimony as to reproduction cost which as we have seen was undisputed by the city's expert Hine. It is true that Cheney included in his estimate two dwellings and a barn which were not included by Hine and that the two witnesses based their estimates on different land values and included in the Cheney estimate are related overheads on a basis of approximately twenty per cent of the value of all property except land, whereas the Commission allowed fifteen per cent for such overheads and there may be other variations, but due allowance for all these differences will not account for the vast difference between $89,014.82, the value of the property as fixed by the Commission, and $149,593.59, its reproduction cost less depreciation as given by Cheney. As to the electric property Cheney estimated its

original cost at $662,926 and its reproduction cost at $1,011,356.27 which he reduced for depreciation to $894,087.59. Mr. Hine on the basis of what he termed " normal reproduction cost " fixed the value of the electric property at $586,335. The Commission found its value to be $627,985, or somewhere between the estimated cost price of the two experts for the company and city respectively and very much less than $894,087.59, the reproduction cost less depreciation as given by Cheney. As to the gas property the disparity between the valuation of the Commission and reproduction cost is still more glaring. Cheney's estimate of original cost is $398,914.77 and of reproduction cost $798,228.18 which he reduced for depreciation to $683,951.28. Hine fixed the value at $399,552. The Commission found its value to be $383,008 or less than the estimate of either witness as to original cost. This case presents a situation parallel to that which existed in the *Southwestern Bell Telephone Co. Case* (*supra*). There the company produced evidence of the reproduction cost of the property which was not controverted except by appraisals made from three to six years prior to the time of the investigation which was in the year 1919 and when prices were affected by war conditions. The Commission said in its report " that the values placed by the company upon the property are excessive and not a just basis for rate making." But the court said: " Obviously, the Commission undertook to value the property without according any weight to the greatly enhanced costs of material, labor, supplies, etc., over those prevailing in 1913, 1914 and 1916. * * * Witnesses for the company asserted — and there was no substantial evidence to the contrary — that excluding cost of establishing the business the property was worth at least 25% more than the Commission's estimates " and reversed judgments of the courts which sustained the order of the Commission. The inference from that case is that uncontradicted evidence as to reproduction cost was held to be a dominating if not a conclusive element in establishing valuation even when prices due to war conditions were abnormally high. In the *Bluefield Water Works Case* (*supra*) the court said: " The record clearly shows that the Commission in arriving at its final figure did not accord proper, if any, weight to the greatly enhanced costs of construction in 1920 over those prevailing about 1915 and before the war, as established by uncontradicted evidence; and the company's detailed estimated cost of reproduction new, less depreciation, at 1920 prices, appears to have been wholly disregarded. This was erroneous." In *Monroe Gaslight & Fuel Co. v. Michigan Public Utilities Commission* (292 Fed. 139) the court after considering the *Southwestern Bell Telephone Co. Case*

**112** Matter of Peoples Gas & El. Co. *v.* Pub. Serv. Comm.

Third Department, September, 1925. [Vol. 214

(*supra*), the *Bluefield Water Works Case* (*supra*), and the *Georgia Railway & Power Co. Case* (*supra*) construed the first mentioned case " as holding that, where it stands not impeached or attacked otherwise than it was in that case, the reproduction cost is the dominating element in the fixing of the rate base; and if a Commission, which leaves it substantially unimpeached, fails to give it that dominating effect, there is an error of law which the court must correct," and further stated: " The opinion in the *Bluefield Water Case* tends to confirm this construction of the *Southwestern Bell Case.* The rate base made by the Commission was set aside because due regard had not been given to reproduction cost." In *New York Telephone Co.* v. *Prendergast* (300 Fed. 822) it is said: " By a long line of decisions, of which *Monroe, etc., Co.* v. *Michigan,* 292 Fed. 139, is one of the latest, reproduction costs less depreciation is the dominant element in rate base ascertainment. No one element is exclusive of all others, but the decision complained of deliberately lays aside as unimportant, all serious consideration of reproduction cost." Although it is possible to make various combinations of figures in the record before us we are able to find none indicating that the Commission has given much weight to the testimony as to reproduction cost. It is quite true that reproduction cost is only one element of value and must be considered in connection with other elements but we find nothing in this record which counterbalances or outweighs the consideration which should have been given to reproduction cost. Certainly the opinion of the Commission does not indicate that it had in mind any such overbalancing or outweighing element. Neither do the respondents in their argument suggest any overbalancing or outweighing element. They merely criticise the petitioner's estimate of twenty per cent for related overheads which as we have seen was only five per cent higher than allowed by the Commission and they cite the case of *United States* v. *Boston, Cape Cod & New York Canal Co.* (271 Fed. 877) where it was held that evidence of reproduction cost was inadmissible unless accompanied by evidence that a reasonably prudent person would undertake such construction as a commercial proposition. The question in that case involved the reproduction cost of the Cape Cod canal, a much more gigantic construction than the one with which we are dealing and at a time when prices due to war conditions were abnormally high and what was said by the court must be construed with reference to those features of the case. If anything more was intended it is in conflict with the above cited *Southwestern Bell Telephone* and *Bluefield Water Works* cases, which have more recently been decided by the Supreme Court. The city's expert

witness was competent to express an opinion as to reproduction cost, had he desired to do so. Instead thereof by means of some vague theory called "normal reproduction cost," which the Commission itself has properly described as substantially only original cost, he designedly or otherwise evaded the issue. The difficulty is that the city permitted this branch of the case to go by default. We are, therefore, justified in concluding that the evidence of the petitioner on this branch of the case is substantially correct and the authorities cited require us to hold that it is of dominating importance in the absence of evidence destroying or substantially weakening its effect. We think there was clearly an obvious error on the part of the Commission in its failure to give due weight to the uncontradicted evidence of reproduction cost.

As to the question of going value the Commission summarily disposes of it with this terse sentence: "There is no evidence before the Commission upon which going value can be allowed." If this means that there is no evidence which would support a finding of going value it indicates a misapprehension of the situation. That going value is an element which must be taken into consideration in fixing rates is authoritatively established by both the Federal and State courts. (*Des Moines Gas Co.* v. *City of Des Moines,* 238 U. S. 153; *City of Houston* v. *Southwestern Bell Telephone Co.,* 259 id. 318, 324; *Georgia Railway & Power Co.* v. *Railroad Commission of Georgia,* 262 id. 625; *Galveston Electric Co.* v. *City of Galveston,* 258 id. 388; *People ex rel. Kings County Lighting Co.* v. *Willcox,* 210 N. Y. 479.) Of course there are cases where a property has no going value. But here is a long-established plant supplying a large number of customers, the property of which as the Commission says is maintained in a good state of efficiency and in respect to which there is oral testimony of competent witnesses as to the amount of the going value. This latter kind of evidence was justified in *People ex rel. Kings County Lighting Co.* v. *Willcox* (*supra,* 493). The petitioner is a going concern and has been for a long time. It seems to go well and if such is the case it has a going value. To establish such a business and to develop it so that it functions properly costs more than the mere cost of assembling the materials constituting the buildings and providing the necessary tangible equipment. The Commission has summarized the different items constituting the rate base established but it does not appear that any allowance has been made for going value. In the *Des Moines Case* (*supra*), cited by respondents, the element of going value was included in other items constituting the rate base. It is a fair inference in this case that no such allowance has been made. We need not, however, pursue this question further

8

because for reasons heretofore stated there must be a rehearing. We content ourselves now with calling attention to the fact that there is evidence in the record which would sustain an allowance for going value.

The determination should be annulled and the proceedings remitted to the Public Service Commission, with fifty dollars costs and disbursements.

All concur.

Determination annulled and proceedings remitted to the Public Service Commission, with fifty dollars costs and disbursements.