CITY OF ROCHESTER, Plaintiff, *v.* NEW YORK STATE RAILWAYS, Defendant.

Supreme Court, Monroe County, June 8, 1926.

Street railways — proceeding under contract authorizing review of appraisal of street railway property in city of Rochester — defendant not entitled to judgment on pleadings under Rules of Civil Practice, rule 112, where complaint presents issues of which plaintiff has right to trial — laches and Statute of Limitations not available against municipality where contract failed to recite time in which city had right to review appraisal — city's right to appraisal was not barred by approval of contract by Public Service Commission — city not estopped by reason of having assented to appraisal — appraisal predicated on erroneous rules and principles — plaintiff not barred from showing on trial that allowance for preliminary expenses is excessive — appraisal made on theory that property is new property, without making deduction for depreciation, erroneous — "present value" and "fair value" defined.

In a proceeding, under a contract by which the city of Rochester was authorized to review an appraisal of street railway property, defendant railway company is not entitled to judgment on the pleadings, pursuant to rule 112 of the Rules of Civil Practice, where the city's amended complaint recites a cause of action and presents issues, of which the city has a right to a trial, nor is the city barred from reviewing the appraisal upon the ground of laches or the Statute of Limitations, where no particular proceeding was directed, and the contract, under which the city claimed its right to review, recited no time limit, and the action for review was brought within a reasonable time after the submission of the appraisal.

Nor can it be said that the city has ratified the appraisal and, therefore, is not in a position to question it in the courts by reason of the approval of the contract by the Public Service Commission, since the ratification of the appraisal under a contract of street railway property is not involved in an application under a statute for the approval by the Public Service Commission of a contract which specifically authorized a review of an appraisal in the courts. Nor is the city estopped from seeking a review of the appraisal where the railway company issued bonds, paid dividends and made replacements and renewals on the strength of the appraisal, which was subject to review, knowing that such review was authorized and contemplated.

Moreover, the city is entitled to be heard upon the claim that the appraisers did not proceed in accordance with and were not governed by the established rules and principles used in determining proper valuations for the purpose of fixing rates; this the appraisers were required to do, under the service-at-cost contract. Furthermore, it was error to make use of composite unit prices for a period of five years immediately preceding the date of the contract where the prices during those years were abnormally high by reason of the world war.

An arbitrary addition of fifteen per cent for preliminary expenses, engineering, legal expenses, taxes and interest during construction, without determining what amount had been actually expended, entitles the city to show upon the trial, if it can, that said amount is an excessive allowance for preliminary expenses.

The city is also entitled to show that the appraisers failed and refused to deduct anything on account of depreciation, but, on the contrary, appraised defendant's property as though it were new, since it is clearly erroneous to appraise said property as new property without making deduction for depreciation in its condition. The " present value " of the public utility for rate-making does not mean the replacement cost less depreciation, but a consideration of all the elements used in rate-making cases; reproduction cost less depreciation is not a sole criterion, since it is only necessary to consider that under such a rule in time of price deflation a public utility might have a base value fixed at less than its investment, and in times of price inflation make a profit on a temporary rise in prices. A " fair value " for rate-making is not the value for exchange, but such a value found after considering all relevant facts as will give the public utility a reasonable return and the public a reasonable rate.

MOTION by defendant for judgment on the pleadings.

*Clarence M. Platt, Corporation Counsel* [*George B. Draper* of counsel], for the plaintiff.

*Harris, Beach, Harris & Matson,* for the defendant.

RODENBECK, J. The defendant is not entitled to judgment on the pleadings. The motion is made under rule 112 of the Rules of Civil Practice and by so moving defendant " admits every material fact set out in the complaint " (*Emanuel* v. *Walter*, 138 App. Div. 818) and is not entitled to judgment if the complaint as amended, and the facts stipulated, contain a cause of action and present issues of which the plaintiff has a right to a trial. (Id.) There are such issues presented by the amended complaint and the stipulation of the parties which the court cannot determine on this motion.

The defendant, however, claims that the plaintiff has lost its right to a trial of the issues by reason of its delay in commencing this action and by virtue of its conduct since the filing of the appraisal. A consideration of the position taken by the defendant under these heads shows that they are not sufficiently well founded to warrant a dismissal of the complaint and a judgment in favor of the defendant on the pleadings. Some of the facts upon which these defenses are predicated are contained in the stipulation into which the parties entered so that in considering these defenses there must be taken into account the facts alleged in the amended complaint and those conceded in the stipulation.

As to the claim of laches and the running of the Statute of Limitations against the right of the city to review the appraisal, it may be said that there is no limitation upon the time within which the city might sue except such as would be imposed by the court. The contract does not provide the time within which a review shall be taken. The proceeding sought to be reviewed is not an arbitration and the provisions of law relating to such a proceeding do not apply. The proper proceeding to review the

appraisal is not a certiorari and the time limit for bringing such a proceeding is not applicable.    The appraisers are not arbitrators nor are they an inferior or quasi-judicial body but they are persons selected under the contract to fix the fair or base value of the property involved.    There is no time limit prescribed by statute which is applicable to the time within which an action must be brought to review the appraisal but at the same time the court will require such a course to be taken within a reasonable time after the submission of the appraisal.    What is a reasonable time, however, is a matter of judgment for the court under the circumstances of the case.    The report of the appraisers was submitted July 18, 1921, and this action was brought about two years and six months thereafter, namely, January 26, 1924, but during the interim various acts took place which have a bearing upon the question of laches on the part of the plaintiff.    During this interval, and eleven months after the report was filed, there was an approval of the contract by the Public Service Commission pursuant to a legislative act, the passage of which and the approval thereunder both sides contemplated.    Within six months after the appraisal by the Public Service Commission there was a reference of the appraisers' report by the common council to the bureau of municipal research, which held the report a little over six months and then made its report to the common council August 17, 1923, and promptly thereafter on August 28, 1923, a committee of the common council made its recommendation thereon and the common council authorized the institution of the present action which was brought five months after such authorization.    The period of time taken for the plaintiff to get under way would be regarded in the case of individuals as unreasonable but greater latitude is accorded in this respect to municipal corporations in view of the interests of the public (*Stemmler* v. *Mayor*, 45 App. Div. 573; *U. S.* v. *Kirkpatrick*, 9 Wheat. 720, 735; *Cox* v. *Stokes*, 156 N. Y. 491, 511), and under the circumstances it cannot be said that there has been such an unreasonable delay as to charge the plaintiff with laches and bar it from its remedy under the contract.

The next equitable defense urged by the defendant is that the city has ratified the appraisal and is, therefore, not in a position to question it in the courts.    This position is not well taken.    The act of the Public Service Commission was an approval of the contract and not of the appraisal.    Whatever there was in the report of the Public Service Commission upon this subject was outside its function which was merely an approval of the contract.    The contract provided for a review of the appraisal and this right was not cut off by any action of the Public Service Commission in

approving the contract or by any discussion of the reasonableness of the appraisal.    By its course in applying for an approval of the contract the city is barred from attacking the contract itself but it has not affected any of the provisions of the contract but rather reaffirmed them and one of these provisions is the right of the plaintiff to review the appraisal which had been made.

The principle of ratification urged against the plaintiff differs from that of estoppel which is also advanced against it.    Ratification implies assent, express or implied, and under this rule the defendant claims that the city has assented to the appraisal which, as has been shown, it has not done.    Under the principle of estoppel the chief element is an alleged change in the position of a party as a result of the act of the other party.    Under this principle the defendant claims that in reliance upon the inactivity of the city, its application for an approval of the contract and its failure seasonably to begin proceedings to review the appraisal, it paid out large sums in dividends on the basis of the appraisal, sold a large amount of bonds covering its railway system in Rochester in connection with other property and made extensive expenditures for renewals and replacements.    All of these things, however, were done by the defendant with full knowledge of the delay that was necessarily involved in securing the passage of the act by the Legislature authorizing the Public Service Commission to approve of the contract, in applying for and in securing the approval of the Public Service Commission and in obtaining action by the common council and the bureau of municipal research, leading up to the commencement of this action.    The defendant knew all the while that the appraisal was liable to be attacked and it is presumed to have known that the approval by the Public Service Commission did not operate to fix the appraisal as final and conclusive beyond review by the plaintiff.    The defendant did not change its position in any way by the payment of dividends, the sale of bonds or the expenditures for renewals and replacements but did all of these things with the full knowledge that the appraisal would probably be reviewed and it cannot, therefore, be said that the plaintiff has led the defendant into doing these things and changing its position in reliance upon the acts and conduct of the plaintiff.

The further questions involved relate to the merits of the controversy as to whether or not the complaint states a cause of action and there are questions for trial presented.

The complaint alleges that the appraisers did not proceed in accordance with and were not governed by the established rules and principles used in determining public utility valuations for the

49

purpose of fixing rates. This they were required to do under the service at cost contract and if this course was not followed in making the appraisal, to the prejudice of the city, it is entitled at least to be heard upon it. The complaint sets forth three respects in which the appraisers are alleged to have deviated from the course laid down for them in the service at cost contract but under the general allegation the city is not confined to these particular deviations but may on the trial prove others if they exist.

One of the deviations from established rules referred to in the complaint is the use of composite unit prices for a period of five years immediately preceding the date of the contract which the plaintiff alleges was an abnormally high price period due to the World War. The defendant admits that the composite unit prices were used as incident to and as an aid in arriving at the valuation but it does not concede that composite unit prices were used as the basis of the valuation which is the claim made by the plaintiff. Thus the plaintiff is entitled to show that the appraisers used composite unit prices during an abnormally high price period as the basis of their valuation, making no deduction for depreciation. The calculation of the cost of reproduction according to composite unit prices would be a valuable aid in arriving at a valuation but it would not be considered a controlling basis of valuation. Under the pleadings the plaintiff is entitled to show, if it can, that these composite unit prices were improperly used as the basis of the valuation arrived at by the appraisers.

The complaint further alleges that the appraisers arbitrarily added fifteen per cent for preliminary expenses, engineering, legal expenses, taxes and interest during construction without determining what amount had actually been expended. It was probably impracticable for the appraisers to determine the actual amount expended under these heads in the organization and development of the system of street railways in Rochester but this difficulty does not debar the plaintiff from endeavoring to show upon the trial that this amount is an excessive allowance to make for preliminary expenditures. It seems to be the rule that some allowance under this head should be made, but the pleadings raise a question, at least, as to the reasonableness of the percentage of deduction.

The plaintiff further alleges that the appraisers failed and refused to deduct anything on account of depreciation but on the contrary appraised the defendant's property as though it were new although it is alleged that the system of street railways in Rochester had been in existence for many years and was much depreciated from use. This allegation in the complaint raises a serious question of fact upon which the plaintiff is entitled to a trial. It would be

clearly erroneous to appraise the property of the defendant as new property without making a deduction for depreciation in its condition. It is quite proper to make an estimate of the cost of reproducing property at any period but this cost of reproduction would not, except in a very rare instance, represent the value of the property. (*Matter of Peoples Gas & El. Co.* v. *Pub. Serv. Comm.,* 214 App. Div. 108.) If the cost of reproduction less depreciation is to be a controlling guide it " must be applied with reason." (*People ex rel. Kings County L. Co.* v. *Willcox,* 210 N. Y. 479, 495.) The plaintiff is entitled to show, if it can, that no proper depreciation was allowed and the allegation to this effect raises a question of fact that cannot be determined on this motion from the record before the court.

Aside from these questions of fact the plaintiff claims that the appraisal is unjust and excessive and upon this question it is entitled to a trial even though it may be found that the appraisers adopted correct methods in estimating their valuation. It is not enough that the appraisers adopted the rules and principles used in determining public utility valuations for the purpose of fixing rates as provided in the contract but it must appear that these rules and principles were so applied as to produce a fair valuation and not one which could be said to be unjust and excessive.

It is " present value " and " fair value " that control. (*Georgia R. & Power Co.* v. *R. R. Comm.,* 262 U. S. 625.) This does not mean " replacement cost less depreciation " (Id. 630), but a consideration of all of the elements used in rate making cases. (*Smyth* v. *Ames,* 169 U. S. 466.) It does not mean the reasonable value of the property without regard to the purpose of the valuation and the conditions as to prices that prevail. (*Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19; *Minnesota Rate Cases,* 230 id. 352.) That reproduction cost less depreciation is not a sole criterion, it is only necessary to consider that under such a rule in time of price deflation a public utility might have a base value fixed at less than its investment and in times of price inflation, make a profit on a temporary rise in prices. This is not the object of rate making but to give a public utility an opportunity to earn " the reasonable cost of conducting the business " (*State of Missouri ex rel. S. W. Bell Telephone Co.* v. *Public Service Commission,* 262 U. S. 276, 291), which is the cost of operating the business plus the carrying charges of financial obligations assumed and a reasonable sum for dividends and to meet the usual contingencies of the business. (Id. 291.) This is the compensation which the Constitution guarantees and no more and no less. (Id. 291.) To arrive at a fair value on this basis it would not be just to take the reproduction cost less depreciation as a sole criterion

without regard to price levels at the time and in defiance of the prudent investments of the company, its original cost and other elements that go to make up a fair and reasonable value, not for purposes of sale, but for rate making in which are involved a fair rate to the public and a reasonable return to the public utility. That is the guide. When all the elements have been considered, original cost, price variations, reproduction cost and depreciation, book values, investment, operating and up-keep expenses, volume of prospective business and other pertinent items, the value fixed must be a fair value for rate making purposes at the time of the appraisal, neither unjust to the utility in depriving it of a proper return on its investment, nor unfair to the public in compelling it to pay an unnecessarily high rate. It is a complex problem and the value fixed should be capable of reasonable demonstration from the data presented, as a fair and just value to both parties concerned. (*Georgia R. & Power Co.* v. *R. R. Comm.*, *supra.*) The calculations on the basis of pre-war prices, five-year composite unit prices and prices at the time of the appraisal are illuminating but they are not the measure of value imposed in this case which is not designed to yield a profit to the defendant resulting from enhanced prices but merely to enable it to realize the expense of operating and keeping up its road and meeting its financial obligations from investment, with a reasonable excess for dividends and contingencies, or, in other words, a fair value for rate-making purposes. This fair value is not an exchange value but a special value determined by reference to the considerations mentioned and designed to give the defendant a fair return and the public a reasonable rate. Anything below a fair return is confiscatory and anything above it is exorbitant and oppressive. The appraisers did valuable work in preparing an inventory, but the record now before the court on this motion for judgment on the pleadings shows that there is a question of fact presented upon the issues as to the adoption of the proper rules in appraising the property and upon the fairness and reasonableness of the appraisal arrived at.

There are many issues, therefore, raised by the pleadings and stipulation which cannot be determined upon this motion but must be reserved for determination after a trial, and the plaintiff is not barred by any delay or by its acts from raising these questions in this suit.

Motion for judgment on the pleadings denied. So ordered.