REMINGTON ARMS COMPANY, Respondent, *v.* HOWARD W. COTTON, Appellant.

First Department, February 6, 1920.

**Fraud — action to recover overpayments on contract — evidence — denial by defendant that he made contract with plaintiff's representatives — admissibility of evidence by defendant to show nature of contract and with whom made — witnesses — admissibility of evidence by plaintiff on issue of fraud tending to contradict its own witnesses — admissibility of entries in books of subcontractors for whose acts defendant was responsible.**

Where, in an action to recover overpayments on a contract for the supply of tools and fixtures alleged to have been made as the result of false and fraudulent representations of the defendant, the plaintiff, a subsidiary corporation, sought to establish a contract entered into between its representative and the defendant, but the defendant denied *in toto* the making of the contract as testified to by the plaintiff's witnesses, and testified that the contract under which the tools were furnished was made with representatives of the parent company, and, concededly, there was but one contract entered into, it was error to refuse to permit the defendant to testify as to conversations and transactions had with the representatives of the parent company, as he was entitled to show just what the contract was under which he furnished the tools to the plaintiff, and with whom it was made.

In an action to recover overpayments made on a contract for the manufacture of tools, based on fraudulent overcharges by the defendant and his subcontractors, it was proper, on the issue of fraud, to permit the plaintiff to prove by auditors who examined the books of the subcontractors that overcharges had been made, though the subcontractors testifying for the plaintiff had sworn that the bills presented to the defendant were correct, for though a party may not impeach his own witnesses, he may introduce evidence to contradict any fact testified to by his witnesses where it appears that such testimony was not offered for the purposes of impeachment.

Likewise the plaintiff was entitled to show the contents of the books and time sheets of the subcontractors on the issue of fraud, though the plaintiff's witnesses, the said subcontractors, were thereby contradicted.

The objection of the defendant to the admission in evidence of certain entries in said books on the ground that they were not admissions as against the defendant, as he was not in privity thereto, was without merit, because the books were at all times in the possession of the defendant and his subcontractors, for whose acts, so far as the plaintiff is concerned, he should be held responsible.

APPEAL by the defendant, Howard W. Cotton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of May, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Herbert C. Smyth* of counsel [*Frederic C. Scofield* and *Ralph W. Thomas* with him on the brief; *Wellman, Smyth & Scofield,* attorneys], for the appellant.

*David Paine* of counsel [*White & Case,* attorneys], for the respondent.

MERRELL, J.:

The plaintiff has recovered judgment herein against the defendant for the sum of $13,396.64. The judgment was upon a verdict of the jury at Trial Term, who found in plaintiff's favor and against defendant in the sum of $13,234.96. The action was for fraud. Plaintiff sought to recover of defendant the sum of $18,631.20, which sum plaintiff claimed it was induced to overpay defendant for certain rifle gauges and fixtures furnished by defendant to plaintiff upon contract. Plaintiff claimed to be entitled to recover said sum on account of certain fraudulent representations of the defendant and fraudulent and padded bills presented by him representing the cost of manufacture of said tools and fixtures. The total amount paid defendant by plaintiff for said gauges and fixtures was $72,625. In its complaint plaintiff alleges that by reason of said false and fraudulent representations and dishonest bills presented by defendant it was induced to overpay defendant in the sum for which judgment was demanded.

The plaintiff, Remington Arms Company, was incorporated on or about June 1, 1915, under and in accordance with the laws of the State of Delaware. Its principal place of business was at Eddystone, Penn., and it was organized for the purpose of manufacturing Lee-Enfield rifles for the government of Great Britain. The evidence would seem to indicate that the plaintiff corporation was organized as a subsidiary com-

pany to the Remington Arms and Ammunition Company of Bridgeport, Conn. Plaintiff's plant at Eddystone was completed about July 1, 1915. The contract, in connection with which plaintiff claims to have been overcharged by the defendant, was made in June, 1915, at Bridgeport, Conn. Plaintiff claims that the contract was made and negotiated by one Fitzgerald, claimed by plaintiff to have been then in its employ as an equipment engineer. Fitzgerald testified upon the trial that the contract was negotiated by himself acting for the plaintiff corporation with the defendant at Bridgeport, Conn. Fitzgerald testified that the contract was oral between defendant and plaintiff, represented by himself, and was to the effect that the defendant, who represented himself to be a manufacturer of tools and to have in his employ skilled labor, would furnish the plaintiff its requirements in such tools and fixtures in consideration of the payment to defendant for the material used and forty cents per hour for skilled mechanics engaged in the manufacture plus fifty cents per hour to cover overhead charges, such as power, superintendence, inspection, etc. In short, Fitzgerald testified that defendant was to receive, as full compensation for furnishing such tools and fixtures, in addition to the actual cost of material, ninety cents per hour for such mechanics as were engaged in the manufacture thereof. Fitzgerald testified that about three months subsequent to the making of the original contract, and in the fall of 1915, defendant represented that there had been an advance in the cost of labor, and it was agreed that he should receive for said goods an advance of ten cents per hour, and that the agreement was that thereafter he should be paid one dollar per hour for the time spent by skilled mechanics.

The defendant denies the making of any such contract as that claimed by the witness Fitzgerald in behalf of the plaintiff. Defendant testified that the contract which he made with the plaintiff was negotiated with one Wells, its equipment engineer, at Bridgeport, Conn., and one Palmer, its purchasing agent at its Bridgeport plant. The defendant denies ever seeing Fitzgerald until some months after the contract in question was made. Some correspondence was offered and received in evidence which throws some light upon the arrangement between the parties. It is not claimed by

either party that these letters constituted any contract, but that they were merely steps in the negotiations between the parties. From the correspondence it is clear that the contract, whatever it was, was negotiated at Bridgeport, Conn., and that Wells, the equipment engineer, and Palmer, the purchasing agent of the Bridgeport plant, participated therein.

Fitzgerald testified that he talked with the defendant in June, 1915, and that the defendant then represented that he had a manufacturing plant of his own wherein he could manufacture the gauges and other tools required by the plaintiff, and that it was then and there agreed that defendant should furnish the tools in question upon plaintiff's order upon the consideration aforesaid, and that no charges were to be made for inspection, or for foremen not engaged in the actual mechanical work, and that no charge was to be made for apprentices learning the trade in defendant's plant. All overhead charges, according to Fitzgerald's testimony, were to be borne by the defendant, and defendant was to charge only the cost of materials used and the actual time spent by mechanics in the work.

The defendant denies *in toto* the making of the contract claimed by Fitzgerald, and testified that the contract under which he furnished the plaintiff its tools was made by the said representatives of the plaintiff's plant at Bridgeport, Conn. Upon the trial the defendant sought to prove the conversations and transactions which he had with Wells and Palmer, of the Bridgeport company. The evidence shows clearly that there was but one contract between these parties, and that the goods furnished thereunder, amounting to $72,625, were furnished pursuant to a single contract. These goods were paid for by the Remington Arms Company of Eddystone, the plaintiff herein, but it clearly appears by the evidence that the contract itself was made at Bridgeport. Fitzgerald testified to the negotiations being carried on and the contract being made with the defendant at Bridgeport, Conn. The defendant testified that the contract was made at Bridgeport, Conn., but was not made with Fitzgerald, but was, in fact, negotiated and closed with Wells and Palmer of the Bridgeport plant. Under objection of counsel for the plaintiff, defendant was not permitted to testify to the conversations or transactions

which he had with the representatives of the Bridgeport corporation. The court at Trial Term held that the plaintiff could not be bound by any conversations or transactions had between the defendant and the Bridgeport company. It seems to me that the court was in error in excluding this testimony which defendant sought to introduce. The answer of the defendant denies the making of the contract as the result of which the plaintiff seeks to recover. Concededly there was but one contract, and as bearing upon the question as to whether or not the defendant entered into the contract with the plaintiff to which Fitzgerald testified, I think the defendant should have been permitted to show just what the contract was under which the tools in question were furnished to the plaintiff.

The plaintiff claims that the defendant presented certain fraudulent bills; that the defendant charged against the plaintiff the expense of supervision as well as the time of foremen and apprentices, in violation of the terms of his contract. The plaintiff further charges that bills from subcontractors to whom defendant sublet the manufacture of certain of the tools in question, not only contained charges for supervision, foremen and apprentices, but false entries as to the hours devoted to the manufacture of the tools, and that when the defendant presented his bills to the plaintiff that he himself proceeded to add on additional hours and additional charges for inspection. In other words, it is the contention of the plaintiff that in direct violation of his contract with the plaintiff, defendant did not confine his charges to the actual time spent by skilled mechanics in the manufacture of the tools, plus the material used, but that he included therein charges for apprentices, charges for foremen and charges for inspection, and other unauthorized charges, amounting to the sum for which judgment was asked.

The trial court presented to the jury the question of fraud, and a verdict was rendered in favor of the plaintiff. Upon this appeal the defendant, appellant, does not criticise the verdict rendered by the jury upon the evidence before it, the defendant, appellant, assailing the judgment appealed from because of errors of the trial court in the rejection of testimony of the defendant as to conversations with the representatives of the Bridgeport plant, and transactions resulting in the

contract in question and of errors in the admission of evidence claimed by the appellant to have been prejudicial to his rights upon the trial.

I think the defendant should have been permitted, under the circumstances, to testify to the contract under which he claimed to have furnished the plaintiff with the gauges in question. I think the evidence indicates beyond question that not only was the contract made at Bridgeport, Conn., but that it was made by representatives of the Bridgeport company or, at least, that Wells, its equipment engineer, and Palmer, its purchasing agent, participated therein. Moreover, the defendant, denying that he ever entered into any contract through the instrumentality of Fitzgerald, and denying the making of the contract claimed by the plaintiff, should have been permitted to show just what the contract was and with whom made under which the tools were furnished plaintiff. Fitzgerald testified that he negotiated the contract early in June, but on cross-examination, upon being confronted with a letter written on the stationery of the Remington Arms and Ammunition Company of Bridgeport, Conn., he was not sure that he had any conversation with the defendant prior to June 12, 1915. He testified that at the time of the trial he was an equipment engineer of the plaintiff corporation. He testified that at the time of the negotiation of the contract he was an equipment engineer, but did not testify that he was in the employ of the Connecticut corporation, and did not testify that he was then in the employ of the Pennsylvania corporation. His testimony was that the Connecticut company referred to him the names of many persons who desired to furnish the materials required by the plaintiff, and that the defendant's name came to him through the employees of the Bridgeport company. He testified that Wells was supplying equipment for the Bridgeport plant and that Palmer was the purchasing agent. He did not deny that some of the negotiations were carried on through the purchasing department of the Bridgeport company. The defendant denied plaintiff's version, and testified that he did not talk with Fitzgerald prior to the making of the contract in question; that Fitzgerald came into the matter many weeks after the contract was made. Defendant insisted that the contract was made directly with the Remington Arms

and Ammunition Company of Bridgeport, Conn. Under these circumstances, the defendant should have been permitted to show just what the conversations and transactions were with the representatives of the Connecticut corporation. The testimony which defendant offered was material upon the question as to whether or not the defendant had entered into the contract claimed in behalf of the plaintiff and was material upon the question as to whether or not the defendant had contracted to furnish the tools required by plaintiff without any charge for inspection or supervision. The defendant frankly admitted that he had added at times ten per cent to the original bills for inspection, and that he had added on the average therefor about six per cent. The jury having returned a verdict as above stated, there can be no doubt that it included in the damages awarded plaintiff the item of $2,881.35 claimed by plaintiff for supervision charges, and the item of $2,526.30 charged for foremen hours, and also the charges for apprentice boys. Had the defendant been able to fortify himself in such charges by proof of the contract under which he acted, the jury would have had such testimony before it and would have had a right to consider the same, not only upon the question of damages, but also upon the question of fraud. The evidence excluded was material to disprove the contract claimed by Fitzgerald. Undoubtedly had the defendant been permitted to prove the actual transactions occurring between himself and the representatives of the Bridgeport corporation, Palmer and Wells, the purchasing agent and equipment engineer of the Bridgeport corporation, would have testified, and the jury would have had the benefit of their testimony upon the question as to whether or not the defendant had defrauded the plaintiff. If it appeared from the testimony of the defendant as to his conversations and transactions with Palmer and Wells coupled with their testimony upon the subject that the contract in fact was as claimed by the defendant, the jury would undoubtedly have given great weight to such testimony in determining whether or not the defendant had been guilty of fraud. As to the item of $2,526.30, charged by defendant for foremen hours, the testimony might not have been of as much importance as though involving the question of supervision, as the defendant testified, as did his subcontractors, that no

charge was actually made for foremen who were not themselves engaged in the performance of mechanical work.

It seems to me that the correspondence offered in evidence indicates quite conclusively that the contract was made as defendant claims, with the Bridgeport company, through Wells and Palmer, its equipment engineer and purchasing agent. The first letter offered in evidence was dated June 8, 1915. This letter was addressed by the defendant to the Remington Arms and Ammunition Company of Bridgeport, Conn., and the matter contained in the communication is called to the " Attention Major Penfield." Penfield was at the time an officer of the Bridgeport company. This letter calls said officer's attention to the fact that the defendant was in a position to handle jig and fixture work; also some gauge work, and sought an opportunity to negotiate with the Remington Arms and Ammunition Company of Bridgeport, Conn., with reference to said company's requirements of such goods. The next letter received in evidence was under date of June 12, 1915, and was written by the defendant to the Remington Arms and Ammunition Company of Bridgeport, Conn. This letter was addressed to " Attention Mr. Palmer," and at the bottom appears a notation over the signature of H. E. Wells, the equipment engineer of the Bridgeport company. This letter of the defendant to the Bridgeport concern, among other things, stated:

" Referring to the writer's visit of yesterday to your works, would advise that I can undoubtedly handle all of your gauge work. This I will do for ninety cents per hour and cost of material, plus ten per cent. for handling charge, f. o. b., New York City."

This letter conclusively shows that up to at least its date on June 12, 1915, the negotiations were between the defendant and the Bridgeport company, and that Palmer and Wells were active in negotiating the contract. This letter refers to the same price per hour as that to which Fitzgerald testified, and undoubtedly referred to the contract under which defendant finally furnished plaintiff with the tools. Had the defendant been permitted to prove just what the conversation was between himself and Palmer and Wells of the Bridgeport company, it is likely that an entirely different contract from that to which Fitzgerald testified would have been shown.

Defendant's testimony that Fitzgerald was not known to him in the transaction until many weeks after he had closed with the plaintiff is corroborated by defendant's letter to the Remington Arms and Ammunition. Company, Eddystone, Penn., of August 11, 1915. This letter is directed to the "Attention of Mr. Fitzgerald." So far as the correspondence is concerned, this is the first evidence of Fitzgerald's connection with the transaction. The order under which the gauges and tools were furnished plaintiff by defendant was in writing under date of June 21, 1915. The order was upon the stationery of the Remington Arms and Ammunition Company, Bridgeport Works, and was dated at Bridgeport, Conn.· It was addressed to the defendant and directed him to "ship and charge to Remington Arms and Ammunition Co., Bridgeport Works, Bridgeport, Conn.," the gauges and tools mentioned in the order, and is signed by Remington Arms and Ammunition Company, Bridgeport Works, A. H. Meyerhoff, General Purchasing Agent. Thus as late as June twenty-first the transaction appears to have been carried on by the Remington Arms and Ammunition Company of Bridgeport, Conn., of which Wells was equipment engineer, and Palmer purchasing agent. On July 3, 1915, referring to said order, the Remington Arms and Ammunition Company, Bridgeport Works, wrote the defendant as follows:

"Established 1816
"REMINGTON ARMS AND AMMUNITION CO.,
"Bridgeport Works,
"Bridgeport, Conn.
"*July* 3, 1915.
"Mr. H. W. COTTON,
"233 Broadway,
"New York City:

"DEAR SIR.— (1) Will you kindly note that all material ordered by our order No. 2108 was ordered for our Philadelphia Plant, and, therefore, is to be held for shipping instructions, which you will receive at a later date. Under no circumstances are goods on this order to be forwarded to the Bridgeport Works.

"(2) In billing this material, the invoice should be sent to the Remington Arms Company of Delaware, Eddystone, Pa.

" (3) Please note that these instructions apply only to material on the order number as stated above.

" Very truly yours,

" REMINGTON ARMS & AMMUNITION CO.,

" BRIDGEPORT WORKS,

" O. P. PALMER,

" W. M. N. /K. Mc.          *Purchasing Department.*"

Thus as late as July 3, 1915, correspondence between the parties was carried on by the defendant with the Bridgeport corporation, and on said date that company was instructing the defendant to send all material " ordered by our order No. 2108 " to the Eddystone, Penn., plant.

The defendant here is charged with fraud in respect to the execution of the contract. He was entitled to show not only that no such contract as that claimed by plaintiff was ever made, but was also entitled to show all of the facts relative to the contract which he performed. I think the refusal of the trial court to permit the defendant to show what the transactions were with representatives of the Bridgeport company constituted reversible error, and that a retrial of the issues must be directed.

The appellant raises other questions as to the admissibility of evidence of the defendant which was received upon the trial. As our determination will direct a new trial of the issues, it is expedient that we consider defendant's objections to the reception of such evidence.

The plaintiff claims that when the contract was made defendant represented that he had a plant of his own wherein the tools required by plaintiff were to be manufactured. The evidence shows that at that time the defendant had no plant of his own. The defendant, however, thereafter built a plant which went into operation about November 1, 1915. The testimony upon the trial does not indicate that the plaintiff particularly objected to defendant's subletting to others the manufacture of the tools in question. For the evident purpose of checking up on defendant the plaintiff sent out two alleged expert accountants or auditors to visit the plants where the tools were being manufactured. These auditors visited the

various plants, including the defendant's, and were accorded every possible attention and opportunity to investigate and discover the prevailing conditions at said plants. The books of the defendant and of the subcontractors were opened and audited by the plaintiff's said employees. The auditors themselves were sworn and testified that they inspected not only the books of the several concerns but the time sheets and compared the latter carefully with the bills presented by the defendant and questioned by the plaintiff. From all the data at hand the auditors made up a statement respecting the alleged overcharges or added hours, and also the hours charged for apprentices, foremen and supervision. The plaintiff also put upon the stand certain of the subcontractors manufacturing the tools. These subcontractors testified that their bills which were presented to the defendant were correct, and that they contained no charge for labor not actually performed. Thereupon the plaintiff was permitted to show by the auditors the facts which they claim to have discovered. The appellant claims that the testimony of these auditors was incompetent as it tended to impeach the testimony of the subcontractors whom plaintiff had offered as witnesses. The respondent's position is that the testimony of the auditors was not offered to impeach the contractors whose testimony had been offered by the plaintiff, but to show the facts as they actually existed. The law is well settled that a party may not impeach his own witnesses, although it be shown that such witnesses be prejudiced and interested. Nevertheless, a party may introduce evidence and swear witnesses to contradict any fact testified to by his witnesses where it appears that such testimony is not offered for the purpose of impeachment. As was held by the Court of Appeals in *Coulter* v. *American Merchants' Union Express Co.* (56 N. Y. 585): " A party may contradict his own witness as to a fact material in the case, although the effect of the proof may be to discredit him; but he cannot impeach him, although subsequently called as a witness for the adverse party, either by general evidence or by proof of contradictory statements out of court."

It is the claim of the appellant that the statements contained on the books of the subcontractors are in the nature of admissions made by such subcontractors, and as they are

contradictory to the statements made upon the stand, they were incompetent. I think the appellant is in error, and that the plaintiff in offering the books did so for the purpose of establishing the defendant's fraud. For such purpose, I think the evidence was competent. These witnesses were interested parties. If they had furnished false statements to the defendant, the defendant would be entitled to recover back from them all the money which they had received through such false bills. The issue of fraud involved the falsity of the bills presented, not only by the defendant, but by the subcontractors. Besides, the objection of the appellant upon the trial to such testimony did not specify as ground for the objection that it tended to impeach the witnesses of the plaintiff. I think the plaintiff was entitled to show upon the question of fraud the contents of the various books and time sheets of the subcontractors. Of course, in a way they did contradict the evidence given by the subcontractors themselves, who had been called by the plaintiff, but the issue being in fraud, the plaintiff was properly permitted to show just what the books contained.

The appellant also asserts that the court erred in admitting in evidence certain entries in the books in question, and that such entries were not admissions as against the defendant, as he was not a privy thereto. I think under the issue of fraud involved in this action there is no merit in such objection. The time sheets and such books as were procurable were offered in evidence, and the auditors stated the facts which the books disclosed from an inspection thereof. The books were at all times in the possession of the defendant and his subcontractors, for whose acts, so far as the plaintiff is concerned, the defendant should be held responsible.

I think the court clearly erred in rejecting the testimony offered by the defendant as to the actual transactions leading up to the making of the contract in question.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to appellant to abide event.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.