In the Matter of the Application of THE YONKERS RAILROAD COMPANY, Petitioner, for a Certiorari Order against MILO R. MALTBIE and Others, Constituting the Public Service Commission of the State of New York, Being the State Division of the Department of Public Service of the State of New York, Respondents.*

Third Department, November 2, 1934.

*Alfred T. Davison [Addison B. Scoville, Victor McQuisticn and Alfred T. Davison of counsel], for the petitioner.*

*Charles G. Blakeslee [John T. Ryan of counsel], for the respondents.*

*Leonard G. McAneny, Corporation Counsel [William A. Walsh and Joseph J. McCann of counsel], for the City of Yonkers.*

CRAPSER, J. The Yonkers Railroad Company has thirty-three and forty-five one-hundredths miles of track measured as a single track operating in the city of Yonkers and it has been operating since 1886. It was first operated as a horse railroad and later as an electric railroad.

The fare was five cents until April 8, 1919, when the city of Yonkers by an ordinance provided for the establishment of a zone system of fares, or a five-cent fare zone and an additional five-cent

fare for travel outside the city of Yonkers. This ordinance was for two years, but was later authorized by an order of the Commission and was the rate of fare at the time of the beginning of this proceeding.

At the outset of this case the company claimed it was unable to obtain the original cost of the property. The Commission desired to have some evidence upon this element of value and thereupon the company submitted a statement of investment costs amounting to $4,308,365. The original cost as submitted by Mr. Lummis for the Commission was $2,351,409. This was partly an estimate and partly secured from the books and records of the company.

The hearing Commissioner decided that the original cost was $2,400,000; he also found the cost to reproduce new to be $4,141,222, which he depreciated by the amount of $1,164,286, leaving the cost to reproduce new less depreciation at $2,976,935. He then allowed $57,000 for materials and supplies, $37,500 for cash working capital, and $100,000 for going value; nothing was allowed for financing. This brought the total figure for a rate base up to $3,171,435.

Section 49 of the Public Service Law provides for the examination by the Commission into the rates of fare charged by street railroad corporations and if they are found insufficient to yield reasonable compensation, the Commission shall, with due regard among other things to the estimated prospective earning capacity of such property at the rate of fare at the time fixed and existent and to a reasonable average return upon the value of the property actually used in the public service, and to the necessity of making reservation out of income for surplus and contingencies, determine the just and reasonable rates, fares and charges to be thereafter observed and in force as a maximum to be charged for the services to be performed. The burden of proof under this section was placed upon the street railroad.

The conclusions of the hearing Commissioner are accepted except in regard to paving, passenger cars and equipment, service cars and equipment, substation equipment, overhead expense, including engineering, superintendence and interest during construction.

As to the paving the figures adopted represented only the amount of pavement that had been actually paid for by the company.

None of the cars which were considered in the rate base were owned by the Yonkers Railroad Company; they were owned by the Third Avenue Railroad Company and leased to the Yonkers Railroad Company. Either the rented equipment should be omitted from the rate base and the rent included as an operating expense or the equipment should be treated as a part of the rate base and the rental eliminated from the operating expenses.

The hearing Commissioner eliminated the rental from the operating expenses on the ground that it was only a nominal rental and not based upon the cost of reproduction.

The statute says that the rate shall be fixed upon the value of the property actually used in the public service. These cars were actually used in public service and it seems fair to have included them in the rate base and to have excluded the rental from the operating expenses. (*City of Albany* v. *United Traction Co.*, Public Utilities Reports, 1927D, 637, 646; *Bluefield Co.* v. *Public Service Commission*, 262 U. S. 679; 43 S. Ct. 675; *State of Missouri ex rel. Southwestern Telephone Co.* v. *Public Service Commission*, 262 U. S. 276; 43 S. Ct. 544.)

The Commission refused to allow any going concern value, giving as a reason that street railways, except in large cities, were fast loosing ground and lines were being abandoned and buses were taking their places. This was beyond the power of the Commission to decide; their function was to determine whether or not the company was receiving a fair return upon the property actually devoted to public use under the decisions of the United States Supreme Court in *Des Moines Gas Co.* v. *Des Moines* (238 U. S. 153); *Galveston Electric Co.* v. *Galveston* (258 id. 388); *McCardle* v. *Indianapolis Water Co.* (272 id. 400). An amount for going concern value should be included in the rate base, but that amount should reflect the good judgment of the regulatory commission based upon all the facts and evidence.

There was testimony by the engineer for the company and by the engineer for the city as to the going value. While this testimony represents an opinion it was from competent engineers and could not be entirely disregarded.

Judge MILLER, writing in *People ex rel. Kings County L. Co.* v. *Willcox* (210 N. Y. 479), answered the question, "Is 'going value' a distinct item to be appraised and included in the base upon which the fair return is computed?" and says, "There is no 'logical difference between allowing "going value" in the valuation of a plant when it is to be taken entirely by the public and allowing the same element when valuing the same plant for rate making purposes.'"

The difficulty in determining the going value will not justify the disregarding of it. Rate making is difficult but will not justify confiscation; the difficulty, however, will lessen, as it does in most cases, when we cease to think about the subject vaguely. It takes time to put a new enterprise of any magnitude on its feet after construction has been finished, mistakes of construction have to be corrected, substitutions have to be made, economies have to be

instituted, experiments have to be made, which sometimes turn out to be useless, and organization has to be perfected. None of these things are reflected in the value of the physical property. The company starts out with the bare plant before the expenditure of time, labor and money which co-ordinates these into a working organization, working business. (*People ex rel. Kings County L. Co. v. Willcox*, 210 N. Y. 479; *Matter of Peoples Gas & Electric Co. v. Public Service Commission*, 214 App. Div. 108, 113.)

There was not sufficient evidence upon which to base an allowance in the rate base for the cost of financing; the evidence, such as it was, was too speculative to be of much value.

The Commission based its depreciation on the basis of assumed original cost rather than on present-day cost.

The hearing Commissioner based his depreciation upon present cost, but both the hearing Commissioner and the Commission fixed the annual depreciation rate on the basis of observed depreciation of the property at the time of the appraisal.

It is stated in the case of *United Railways* v. *West* (280 U. S. 234; 50 S. Ct. 123) that depreciation should be based upon present value, not upon cost. One of the items of expense to be ascertained and deducted is the amount necessary to restore property worn out or impaired, so as to continually maintain it as nearly as practicable at the same level of efficiency for the public service. The amount set aside periodically for this purpose is the so-called depreciation allowance. Manifestly, this allowance cannot be limited by the original cost, because if values have advanced the allowance is not sufficient to maintain a level of efficiency. The utility is entitled to see that from earnings the value of the property invested is kept unimpaired, so that, at the end of any given term of years the original investment remains as it was at the beginning. This naturally calls for expenditures equal to the cost of the worn out equipment at the time of replacement; and this, for all practical purposes, means present value. It is a settled rule of this court that the rate base is present value, and it would be wholly illogical to adopt a different rule for depreciation.

The investment cost given by the company at the request of the Commission was an estimate only and the company does not stand upon these figures; they were not put forward as correct but as the best figures which the company could produce. The company was unable to give figures of the original cost of the property and refused to give any figures purporting to be the original cost. The Commission engaged Mr. Lummis to make an estimate of the assumed historical cost of the company's property.

The estimated original cost or assumed historical cost cannot be made a basis for the determination of the rate base in this case. The greatest portion of this property was built or acquired prior to the rise in prices occasioned by the World war. In order for such costs to be considered as affecting the rate base it has to be a cost which is in some way comparable to present day costs.

*Clark's Ferry Co.* v. *Public Service Commission* (291 U. S. 227; 54 S. Ct. 427) says, " It is not open to question that the reasonable cost of the bridge is good evidence of its value at the time of construction. And we have said that ' such actual cost will continue fairly well to measure the amount to be attributed to the physical elements of the property so long as there is no change in the level of applicable prices,' " and cites *McCardle* v. *Indianapolis Water Co.* (272 U. S. 400, 411; 47 S. Ct. 144); *Los Angeles Gas Corp.* v. *Railroad Commission* (289 U. S. 287, 306; 53 S. Ct. 637).

An engineer was sworn for the company and one for the city relative to reproduction costs of the property. Mr. Lummis testified for the Commission concerning the estimated original cost or assumed historical cost, but gave no evidence with reference to present value or cost to reproduce new.

The Commission have reduced the reproduction cost new from the hearing Commissioner's determination in the amount of $296,179, and it is below the amount testified to by the engineer for the city who spent months examining the property. No satisfactory explanation is found for this reduction in the evidence; it seems to be an arbitrary reduction, as the Commission says that the hearing Commissioner reached fair conclusions which were supported by the evidence. The Commission have no power to submit their conclusions or judgments in place of the evidence in the case.

Some stress is laid by the Commission upon the fact that if the property was not already in existence it would not be reproduced and, therefore, the reproduction cost of the property ought not to be considered.

This question was not before the Commission for decision; it is not one of their functions to determine whether or not the property would be or would not be reproduced; it is their function to determine whether the company is receiving a fair return upon the property devoted to public use. (*McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400; *Matter of Peoples Gas & Electric Co.* v. *Public Service Commission*, 214 App. Div. 108.)

The petitioner has never paid any dividends; it has a $1,000,000 bonded indebtedness in the hands of the public, and is indebted to the Third Avenue Railroad Company, which is the practical owner of the property, for more than $3,000,000 for money advanced to cover losses in operation.

The company's engineer thought $90,000 was the proper amount to be allowed for working capital; the city's engineer estimated the amount to be $60,000. The amount of $37,500 was allowed as working capital and was the lowest amount estimated by any one as necessary for the proper operation of the property.

The entire working capital was eliminated from the rate base on the theory that the company's money was all cash money; that it will have the money in hand to meet its obligations before they are incurred.

It is necessary for the company to have on hand some certain amount of money for a balance to pay for accident claims and other contingencies that may arise, and the elimination of any working capital was without justification.

The evidence in the record is insufficient to support the reduction for engineering and superintendence. The amount allowed for interest during construction was contrary to the evidence in the case; it was based upon the assumption that the plant could be constructed in one season, while the evidence was that it would take at least one year.

There are other questions which might be discussed, but it seems unnecessary to do so because there must be a rehearing.

The determination of the Public Service Commission should be annulled and the proceeding remitted to the Public Service Commission, with fifty dollars costs and disbursements.

HILL, P. J., McNAMEE and HEFFERNAN, JJ., concur; RHODES, J., concurs in the result, with separate memorandum.

RHODES, J. I concur with Justice CRAPSER for annulment and remittal, but as the reasons which impel me thereto are not identical with those suggested in his opinion, I am stating them as briefly as possible.

The company petitioner has sought for an increase in rates and by the determination now under review such increase has been refused. It is insisted by the company that the rates established are insufficient to afford a proper return upon its property devoted to public use and are, therefore, confiscatory.

In *United Railways* v. *West* (280 U. S. 234) it is stated: " It is manifest that just compensation for a utility, requiring for efficient public service skillful and prudent management as well as use of the plant, and whose rates are subject to public regulation, is more than current interest on mere investment. Sound business management requires that after paying all expenses of operation, setting aside the necessary sums for depreciation, payment of

interest and *reasonable dividends*, there should still remain something to be passed to the *surplus account;* and a rate of return which does not admit of that being done is not sufficient to assure confidence in the financial soundness of the utility to maintain its credit and enable it to raise money necessary for the proper discharge of its public duties."

Section 49 of the Public Service Law provides that the Commission in a case where the maximum rates are insufficient to yield reasonable compensation for the service rendered, shall " with due regard among other things  *  * , * to a *reasonable average return* upon the value of the property actually used in the public service, and to the necessity of making reservation out of income for *surplus* and contingencies, determine the just and reasonable rates."

The balance sheet of the company as of December 31, 1931, shows total assets of $4,213,080.15; its liabilities, not including $1,000,000 of capital stock, $5,562,495.82. Its corporate surplus account thus showed a deficit, not including outstanding capital stock, of $1,349,415.67. Thus, including its liability for capital stock outstanding, the company was, in common parlance, " in the red " to the extent of $2,349,415.67. That is the condition resulting from the operation of the company at present rates. If, as claimed by the Commission, the valuation of the company assets is too high, then, to that extent, its financial condition is more unfavorable than appears by the balance sheet. Even if the balance sheet be assumed to reflect distorted values and estimates, the inexorable facts are that the company has never paid any dividends and, with the apparent and probably real deficit in surplus above stated, it seems apparent that the company has demonstrated that the rates are confiscatory.

The company insists that there should be included in the rate base the value of passenger cars, service cars and electrical equipment not owned by it but which it rented and actually used.

It is stated in the opinion of Justice CRAPSER that the value of these cars and equipment should be included for the reason that the statute says that the rate shall be fixed upon the value of the property actually used in public service. It seems to me, however, that in determining the value of property actually used in the public service, the statute and decisions have reference to the property of the operating company. It seeks a return upon its capital invested, not upon the capital or property of some other concern. So far as these rented cars and equipment are concerned, the petitioner has invested or expended only the amount of the rentals paid by it and such rentals constitute all of the property of the petitioner devoted to public use, in relation to such cars and

equipment. The reasonable rental value thereof should, therefore, be included and the actual value of the property itself should be excluded.

The petitioner says that the Commission was not justified in considering original cost figures in arriving at the value of its property. The statute says nothing about either original cost or reconstruction cost less depreciation. The statute directs the Commission to determine the value of the property actually used. In *St. Louis & O'Fallon R. Co.* v. *United States* (279 U. S. 461) the court reiterated the rule that the basis of all calculations as to the reasonableness of rates to be charged by a utility corporation "must be the fair value of the property being used by it for the convenience of the public." The opinion then proceeds: " And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses are all matters for consideration, and are to be given such weight as may be just and right in each case." Attention is called to the fact that the Federal statute there applicable directed that the Commission " shall give due considera- tion to all the elements of value recognized by the law of the land for rate-making purposes, and shall give to the property investment account of the carriers only that consideration which under such law it is entitled to in establishing the values for rate-making purposes." No different rule is prescribed by our statute as to the method of determining the value, and in the absence of statutory mandate or controlling decision, all the elements recognized by the law of the land for rate making purposes are to be considered.

Petitioner says that the Commission erroneously eliminated any consideration of going value. It appears that in the opinion of two experts the company has a going value. The Commission did not disregard this testimony, but it considered it and did not accept the figures. It was not obliged to. The Commission, being a fact finding body, was entitled to pass upon the credibility of the witnesses. It was not required to " swallow whole " the testimony of these experts. In the absence of this testimony there was not sufficient evidence to establish any definite figure as to going value. Under section 49 of the Public Service Law the burden of proof is upon the company.

In *Los Angeles Gas Corp.* v. *Railroad Commission* (289 U. S. 313) the court said: " The concept of going value is not to be used to

escape the just exercise of the regulatory power in fixing rates, and, on the other hand, that authority is not entitled to treat a living organism as nothing more than bare bones."

In view of the financial condition of the company as revealed by its balance sheet above referred to, it seems to me the Commission was justified in determining that the going value of the concern is negligible.

I do not agree with Justice CRAPSER that it was error for the Commission to make its estimate of annual depreciation on the basis of original cost rather than upon present value. (See *Lindheimer* v. *Illinois Tel. Co.*, 292 U. S. 151.)

It is suggested by Justice CRAPSER that the Commission erroneously disregarded the evidence as to the amount of working capital necessary. Here again the record indicates that the Commission did not disregard the evidence; that they considered it but did not regard the estimates as accurate. The same may be said as to the action of the Commission in reducing the amount estimated as necessary for engineering and superintendence, and as to interest during construction. Similarly, as to the amount determined by the Commission as allowable for paving. The figures presented to the Commission as to this item were estimates based upon the hypothesis of the cost and value of the paving at the time of the hearing. The value thereof was a question of fact to be determined by the Commission from the evidence before it.

For the reasons stated, I vote to annul the determination and remit the matter to the Commission for further proceedings in accordance herewith.

Determination annulled and proceeding remitted to the Public Service Commission, with fifty dollars costs and disbursements.