In the Matter of the Application of THE WESTCHESTER ELECTRIC RAILROAD COMPANY and Others, Petitioners, for a Certiorari Order to Be Directed to MILO R. MALTBIE and Others, Constituting the Public Service Commission of the State of New York, Being the State Division of the Department of Public Service of the State of New York, Respondents, to Review the Determination of the Public Service Commission in the Matter of the Application of the Said Petitioners for the Approval of Contracts of Lease Dated November 15, 1933, to the Petitioner WESTCHESTER STREET TRANSPORTATION COMPANY, INC., of the Use of All the Omnibus Lines of All the Said Petitioners (Except Petitioner Westchester Street Transportation Company, Inc.).

Third Department, November 13, 1935.

*Alfred T. Davison* [*Alfred T. Davison, Victor McQuistion* and *Addison B. Scoville* of counsel], for the petitioners.

*Charles G. Blakeslee, Counsel to the Public Service Commission,* for the respondents.

HILL, P. J.    I favor an annulment of the order of the Commission denying the application of petitioners to lease their separately owned omnibus lines to the petitioner the Westchester Street Transportation Company, Inc.    The application was denied upon the ground that the statute did not permit the lease.    Four of the petitioners are street railroad corporations that under section 50-a of the Public Service Law now operate omnibus lines in place of cars on tracks on a portion of their lines.    The other three companies were incorporated for the purpose of operating, and do operate, omnibus lines.

The stock of these seven companies is, through inter-corporate relationship, owned by one stockholder.    All the lines are now operated as a unit in the densely populated area of southern Westchester county.    This makes for the convenience of the public.    If each company operated separately on the streets where it had a franchise, there could be no through bus routes.    Continued unified operation without a lease is impossible because of an order made by the Commission.    " (a) All motor buses shall display route and destination signs on the front thereof.    (b) Permanent signs or markings shall be placed on the sides of each bus to show the operator's number which will be assigned by the Commission, and the name of the corporation, partnership or person authorized to operate the line."    This order is authorized by statute (Pub. Service Law, § 61, subd. 14, as added by Laws of 1934, chap. 900). It would not be practical or even possible for a change of operators to be made at street corners where the bus leaves the zone covered by one of the companies and passes into that of another, or to change on the front of the bus the permanent signs giving the name of the corporation that is authorized to operate the line.    More buses, more operators and more garage facilities will be required for separate than for unified operation.    Every consideration of economy of operation as well as of public convenience requires that leave to lease all of the lines to one company be given, if the law permits.    " Subject to the permission and approval of the commission, any omnibus corporation, or any corporation owning or

operating any omnibus line within this state, may contract with any other such corporation for the use of their respective line or lines, or any part thereof, and thereafter use the same in such manner and for such time as may be prescribed in such contract." (Pub. Service Law, § 63-f.) Three of the petitioners are " omnibus corporations;" each of the four street railway companies comes within the other classification in the statute, " any corporation owning or operating any omnibus line within this state." This statute, unexplained and unamplified, permits the contract of leasing if the Public Service Commission approves. However, in addition, we find the following: " The term ' omnibus line ' when used in this chapter, means a motor vehicle or motor vehicles operated for the use or convenience of the public, usually along the same route or between stated termini, or on a fixed or stated schedule, carrying passengers for hire, and the property and equipment used in connection therewith." (Pub. Service Law, § 2, subd. 28.) Then follows subdivision 29 of the same section: " The term ' omnibus corporation,' when used in this chapter, includes every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, owning, leasing or operating or proposing to own, lease or operate an omnibus line."

The Commission has denied leave to contract chiefly upon the ground that the decision in *Matter of Chalmers* v. *Public Service Comm.* (226 App. Div. 702; affd., 251 N. Y. 570) required a denial. Both the Interborough and the New York Company were engaged in operating cars by electric energy. This in part was produced by company owned plants. The amount of electricity required varied during the day. At certain hours more was developed than required. This was sold to the New York Edison Company and a limited number of persons and corporations closely associated with the transit companies. Chalmers demanded that the transit companies sell electricity to him for the operation of a railroad of which he was the receiver. The ground of his application was that by selling electricity the transit companies, under subdivision 13 of section 2 of the Public Service Law, became " electric corporations " and were required by statute to sell electricity to all persons adjacent to their lines who applied. The Commission properly determined that the sales made were incidental to the operation of the transit lines and denied the application. This ruling was confirmed by this court and by the Court of Appeals. To have decided that because of the sale of surplus electric energy the transit companies had become electric corporations and required to furnish electricity to all applicants contiguous to their lines, necessitating the installation of

additional plant, would have been in disregard of the obvious legislative intent in enacting the provisions of the Public Service Law governing the sale of electricity. While here subdivisions 28 and 29 of section 2 and section 63-f of the Public Service Law indicate a legislative intent that when the public will be convenienced and the bus lines operated more economically through consolidation, consent is required. The *Chalmers* case is not an authority to the contrary.

Another reason assigned for the denial in the opinion by the hearing deputy is the provision in the consent given by the city of Mt. Vernon at the time buses were substituted for cars on tracks by the petitioner, Westchester Electric Railroad Company: "During such time as buses may be operated under this consent, such operation of buses shall be and be deemed to be the operation of a street surface railroad under and pursuant to the franchise and consents of the company therefor."

Section 63-f of the Public Service Law empowers and requires, if public interest and company benefits are indicated, that the Commission permit "any corporation" operating buses to enter into a contract of leasing. The Mt. Vernon consent does not make this statute inoperative. The reason for the clause in the consent is not disclosed. The argument in the opinion that the street railway companies may be required to relay tracks and replace buses with trolley cars is not in keeping with present-day trends. However, if such an improbable contingency should arise, a court of law or of equity would be the proper forum to determine the meaning and application of the consent.

I vote to annul the determination and to remit the matter to the Public Service Commission.

RHODES, McNAMEE and BLISS, JJ., concur; HEFFERNAN, J., dissents and votes to confirm the determination and order.

Determination and order of the Public Service Commission annulled, and matter remitted, with fifty dollars costs and disbursements.