In the Matter of the Application of THE YONKERS RAILROAD COMPANY, Petitioner, for a Certiorari Order to Be Directed to MILO R. MALTBIE and Others, Constituting the Public Service Commission of the State of New York, Being the State Division of the Department of Public Service of the State of New York, Respondents, to Review the Determination of the Public Service Commission by Its Order of June 25, 1935, Denying the Application of the Yonkers Railroad Company to Said Commission for Permission to Increase Passenger Fares in the City of Yonkers, Said Matter Before the Public Service Commission Being Designated as P. S. C. Case No. 6364.

Third Department, May 12, 1937.

*Alfred T. Davison* [*Addison B. Scoville, Victor McQuistion* and *Alfred T. Davison* of counsel], for the petitioner.

*Gay H. Brown, Counsel to Public Service Commission* [*Raymond J. McVeigh* and *John T. Ryan* of counsel], for the Public Service Commission.

*Leonard G. McAneny, Corporation Counsel* [*William A. Walsh,* special counsel], for the City of Yonkers.

Determination confirmed, with fifty dollars costs and disbursements.

RHODES, MCNAMEE and BLISS, JJ., concur. Opinion by RHODES, J., in which MCNAMEE, J., concurs. HILL, P. J., dissents, in an opinion in which CRAPSER, J., concurs.

RHODES, J. Petitioner applied to the Public Service Commission for permission to increase its rates of fare. The application was denied and the matter came before this court for review on certiorari, resulting in an annulment of the determination of the Commission (242 App. Div. 319). Further proceedings were thereupon had before the Commission, new evidence was introduced, the Commission has again denied the relief sought and the determination thus made is again before us for review.

Petitioner's counsel asserts that the method of procedure followed by the Commission on the rehearing was improper in that the Commission should not have reopened the proceeding and received further evidence, but that it should simply have corrected its determination upon the evidence already in the record to conform to the decision of this court.

Our former decision did not thus circumscribe the hearing by the Commission; if its previous determination was made without supporting evidence and if there was evidence available justifying the determination of the Commission it should not be precluded from receiving such evidence.

The Commission is not estopped on a rehearing from taking new evidence and making new findings. (*St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38.)

As of December 31, 1931, the Commission has determined upon supporting evidence the original cost and the reproduction cost of petitioner's property and from these valuations has determined the rate base cost of the property before depreciation. After depreciating the property to correspond with the date of December 31, 1931, it has found the value of petitioner's property to be $1,601,112, which, with an allowance of $59,000 for working capital, forms the rate base of $1,660,112, as compared with its former valuation on the previous hearing of $1,962,284.

Complaint is made as to this reduction of the rate base valuation, but if the determination finds support in evidence in the record we may not disturb it.

If the order herein is fair and reasonable within the grant of power constitutionally conferred by the Legislature, it is not open to judicial review. (*Matter of New York Edison Co.* v. *Maltbie,* 244 App. Div. 685; *Matter of Pennsylvania Gas Co.* v. *Public Service Commission,* 211 id. 253; *People ex rel. New York & Queens Gas Co.* v. *McCall,* 219 N. Y. 84; *Matter of New Rochelle Water Co.* v. *Maltbie,* 248 App. Div. 66; *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38.)

Petitioner's claim is that the determination as to accrued and annual depreciation is not supported by the evidence. This claim is based upon the assertion that the expert witnesses whose testimony has been accepted by the Commission were not competent as experts to testify as to valuation of street railway properties. The witnesses were qualified experts as to utilities in general; whether they were qualified to speak as experts on the matters here involved was a fact to be determined by the Commission, the trier of facts, and ordinarily the decision of a trial court on

this point, when there are any facts to support it, is not open to review in this court. (*Finn* v. *Cassidy*, 165 N. Y. 584; *Nelson* v. *Sun Mut. Ins. Co.*, 71 id. 453; *Slocovich* v. *Orient Mut. Ins. Co.*, 108 id. 56; *Stillwell Mfg. Co.* v. *Phelps*, 130 U. S. 520.)

Counsel for petitioner apparently does not dispute the fact that the testimony of the experts, if competent, was sufficient to support the determination. As the competency of the witnesses was accepted by the Commission, it is deemed unnecessary here to enter into a discussion and analysis of the figures. It is sufficient that the facts in the record support the findings of the Commission.

Further objection is raised that the new testimony introduced was improperly received in that it tended to impeach witnesses in behalf of the city and the Commission on the prior hearing because the new testimony differed from the testimony of former witnesses. A party may, however, prove any material fact in the case by other witnesses, even though the effect is to contradict his own witness. (*Coulter* v. *American Merchants Union Express Co.*, 56 N. Y. 585, 589; *Quick* v. *American Can Co.*, 205 id. 330, 334; *Remington Arms Co.* v. *Cotton*, 190 App. Div. 600, 610; Richardson on Evidence [5th ed.], § 587, p. 492.)

Another objection is that accrued and annual depreciation have been figured by the so-called " straight line " method, and counsel for the Commission does not dispute that this was the method adopted. The testimony now in the record is to the effect that the straight line method of depreciation accurately reflects actual depreciation.

In *Lindheimer* v. *Illinois Bell Telephone Co.* (292 U. S. 151) depreciation was measured by the straight line formula and was accepted by the court. The problem is to determine the present value of the property and any evidence tending to establish such value is competent. (See *Matter of Long Island Lighting Co.* v. *Maltbie*, 249 App. Div. 918.)

The purpose of permitting a depreciation charge is to compensate the utility for property consumed in service, and the duty of the Commission, guided by experience in rate making, is to spread this charge fairly over the years of the life of the property. (*United Railways* v. *West*, 280 U. S. 234.)

Objection is also made to the valuation of service cars owned by petitioner, and of passenger and service cars operated by petitioner which it rents from the Third Avenue Railway Company. The previous decision of this court held that the actual value of these cars should be included in the rate base instead of an allowance for rental charge.

It is now urged that the Commission based its valuation on these cars upon a wrong theory and method, in that the cars in question were compared with a theoretical set-up of new and more efficient cars. Such a method of valuation would be contrary to the rule stated by this court on the former review, but it cannot be said that evidence was not material and competent which showed the relative efficiency of petitioner's cars.

The Commission, however, did not confine itself to this method of proof. On the new hearing the Commission prepared two tables, one showing the depreciation based on original cost and the other upon a valuation basis. It stated that it is not clear from the opinion of the court how the annual depreciation should be computed if value is to be used as a basis, but observed that from the decisions it believed that the value should be spread over the remaining life of the property instead of the entire life of the property, and this is the formula which it adopted. It took the value of the property and divided such value by the number of years of service life remaining, thus obtaining the annual depreciation of the property. This result appears to be in accord with reality as disclosed by the testimony.

In *Lindheimer* v. *Illinois Bell Telephone Co.* (*supra*) the court said:

" Broadly speaking, depreciation is the loss, not restored by current maintenance, which is due to all the factors causing the ultimate retirement of the property. These factors embrace wear and tear, decay, inadequacy, and obsolescence. Annual depreciation is the loss which takes place in a year. In determining reasonable rates for supplying public service, it is proper to include in the operating expenses, that is, in the cost of producing the service, an allowance for consumption of capital in order to maintain the integrity of the investment in the service rendered. The amount necessary to be provided annually for this purpose is the subject of estimate and computation. In this instance, the Company has used the ' straight line ' method of computation, a method approved by the Interstate Commerce Commission. 177 I. C. C., pp. 408, 413. By this method the annual depreciation charge is obtained by dividing the estimated service value by the number of years of estimated service life. The method is designed to spread evenly over the service life of the property the loss which is realized when the property is ultimately retired from service.

" According to the principle of this accounting practice, the loss is computed upon the *actual cost of the property* as entered upon the books, less the expected salvage, and the amount charged each year is one year's *pro rata* share of the total amount."

In the light of new testimony in the record the finding both as to accrued and annual depreciation should not be disturbed.

Another point raised is that the Commission failed to include any specific item for going value. The testimony indicates that the unit prices of various elements have been fixed at an amount sufficient to cover going value without a separate allowance therefor. Where the element of going value is inextricably interwoven with other elements of value in the rate base so that there is adequate allowance therefor, a separate specific item for going value is properly denied. (*St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38, 62 *et seq.* See, also, *Des Moines Gas Co.* v. *Des Moines,* 238 id. 153; *Dayton Power & Light Co.* v. *Public Utilities Comm. of Ohio,* 292 id. 290; *Columbus Gas & Fuel Co.* v. *Public Utilities Comm. of Ohio,* Id. 398.)

Another objection is that no allowance was made for working cash capital to cover payments of accident claims. Testimony in the record shows that the company has sufficient receipts from day to day to cover claims for accidents and that all expenses for accidents are charged to operating expenses.

This court held that the amount allowed for interest during construction was contrary to the evidence. The Commission has reconsidered this item and allowed interest upon the theory that construction would be completed in a year, and has assumed that expenditures were made with approximate uniformity from the beginning to the end of the year; that thus the average interest would be equivalent to one-half the construction period or an equivalent of three per cent on the total amounts invested for construction. This determination has support in the evidence.

The former decision here held that there was insufficient evidence to support the reduction of the Commission for engineering and superintendence. The Commission has now upon the new evidence further depreciated this item upon the percentage of depreciation testified to by the new witnesses. There being evidence now in the record to support the finding it should not be disturbed.

Complaint is made that the rate of return is so small as to be confiscatory. Upon the valuation of the Commission the rate is over six per cent. " There is no particular rate of compensation which must in all cases and in all parts of the country be regarded as sufficient for capital invested in business enterprises. Such compensation must depend greatly upon circumstances and locality; among other things, the amount of risk in the business is a most important factor, as well as the locality where the business is

conducted and the rate expected and usually realized there upon investments of a somewhat similar nature with regard to the risk attending them." (*Willcox* v. *Consol. Gas Co.*, 212 U. S. 19, 48.)

Our attention is not called to any evidence in the record showing facts relative to usual return upon investments or other facts bearing upon the question of what would be a reasonable rate of return. Except as to the necessities of the company as to outlay, we have only the general knowledge that present interest rates are low. The Commission has found that the rate of return is ample. It cannot be said from the record that this finding is not correct.

The unfavorable financial condition of the company emphasizes the serious effect which would result if it should be deprived of the return to which it is entitled; but no matter what its financial condition, it is not entitled to more than a fair return upon the value of the property devoted to public use. (*Galveston Electric Co.* v. *Galveston*, 258 U. S. 388.) From the determination of the Commission it must be held that the return is sufficient.

As pointed out in our previous decision, the burden of proof is placed upon the company by section 49 of the Public Service Law. In the absence of statute the burden of proof would be upon the company, because it is here the moving party and has the affirmative of the issue; that burden has not been met.

The determination should, therefore, be confirmed, with fifty dollars costs.

McNAMEE, J., concurs.

HILL, P. J. (dissenting). On the former appeal in this matter we annulled (242 App. Div. 319) a determination made by a divided Commission wherein the rate base was just under $2,000,000. The dissenting members of the Commission fixed the value several hundred thousand dollars higher. Some of the same errors for which we annulled the first determination appear in this decision, and the rate base as to property considered on the first hearing has been reduced about $500,000. Each decision fixed the value of the property as of December 31, 1930. This decision fixes the " reproduction costs (new) " of petitioner's property as slightly in excess of $3,000,000. The items of property value making up this total are stated. It also fixes a value by items, which is designated " rate base cost (not depreciated)." This is $800,000 less than the reproduction new value. Neither the computations nor the factors used in arriving at the " rate base cost (not depreciated) " are disclosed. Certain items are

valued at the same amount in each of the tables, but in most instances the values fixed as " rate base cost (not depreciated) " are markedly lower than those fixed as " reproduction cost (new)." I quote the values of a few items as fixed respectively by the two tables:

|  | Reproduction cost (new). | Rate base cost (not depreciated). |
|---|---|---|
| Grading. | $82,667 | $70,000 |
| Ties. | 118,603 | 105,000 |
| Rails, fastenings and joints. | 353,467 | 310,000 |
| Special work. | 138,116 | 100,000 |
| Car house. | 405,055 | 340,000 |
| Engineering and superintendence. | 102,951 | 89,883 |

Depreciation was computed on a straight line basis. It was applied to the values designated " rate base cost (not depreciated) " not to " reproduction cost (new)." " Broadly speaking, depreciation is the loss, not restored by current maintenance, which is due to all the factors causing the ultimate retirement of the property. These factors embrace wear and tear, decay, inadequacy, and obsolescence. Annual depreciation is the loss which takes place in a year." (Lindheimer v. Illinois Bell Telephone Co., 292 U. S. 151, 167.) " This naturally calls for expenditures equal to the cost of the worn out equipment at the time of replacement; and this for all practical purposes, means present value. It is the settled rule of this court that the rate base is present value, and it would be wholly illogical to adopt a different rule for depreciation." ( United Railways v. West, 280 U. S. 234, 254.)

Straight line depreciation is an " accounting practice." (Lindheimer Case, supra, p. 168.) Thereunder the life of an item of property is estimated. Its salvage value at the end of its useful life is also estimated. If this accounting practice is being followed, when an item of property is purchased, the cost is known and by subtracting the amount of the estimated salvage therefrom, the remainder represents the value which is consumed during the estimated useful life. Dividing the usable value by the number of years gives the annual depreciation. For example, it is estimated that a telephone pole costing $25 will have a useful life of ten years as a pole, that at the end of that time it will have a salvage value for kindling wood of $2.50. Thus $22.50 of its cost will be used in the service of the public in ten years and the annual depreciation will be $2.25. At the end of the useful life of

the pole, the company will have $22.50 in its reserve for depreciation which, with the $2.50 from salvage, will purchase a new pole, and as the new pole is to be purchased at present-day prices, it is " wholly illogical," as stated in the *West Case (supra)*, to adopt a different rule than present value for the purpose of applying depreciation. In the *Lindheimer Case (supra)*, straight line depreciation is defined as an " accounting practice " and it is stated that it may be relied upon " if the predictions of service life were entirely accurate and retirements were made when and as these predictions were precisely fulfilled " (p. 168), and further, " the predictions must meet the controlling test of experience " (p. 170). In that case straight line depreciation as computed by the company was not accepted, the depreciation being computed by the court under another method at some $3,500,000 less than the straight line depreciation claimed. The rejection of the straight line computation was decisive of the case. " The questionable amounts annually charged to operating expenses for depreciation are large enough to destroy any basis for holding that it has been convincingly shown that the reduction in income through the rates in suit would produce confiscation " (p. 175). There is but a residuum of proof, if any, as to the actual and observed depreciation to sustain the computation made by the Commission in this case. The methods used by the Commission in arriving at its " straight line " depreciation have never been approved by a court of last resort. Depreciation is to be computed as provided in the *West Case (supra)* by applying the percentages of reduction to present value, not to " rate base cost (not depreciated) " an arbitrary figure $800,000 less than present cost. The Commission has reduced its estimated rate base cost by more than $1,400,000 using percentages of depreciation varying from 23.1 to about 80. Every factor used by the Commission was estimated and the cost item was in direct contravention of the rule I have quoted. The prediction as to the number of years any item of property will be useful is always uncertain, but as used by the Commission here, there were additional elements of uncertainty. As all of the property had been used for a time, how long could not be known definitely; this had to be estimated, as well as its additional life. The speculative and arbitrary result which necessarily came from the use of the erroneous figure as to cost, and the other estimates founded on estimates, was not submitted to the " controlling test of experience " by examination of the physical property.

Considering the evidence in support of the finding made by the Commission in connection with that offered by the petitioner, there is such a preponderance of proof against the Commission's

finding as to depreciation that had it been the verdict of a jury rendered in the Supreme Court it would be set aside by the court as against the weight of evidence. (Civ. Prac. Act, § 1304, subd. 5.)■ And further, the Commission, by computing depreciation upon an arbitrary amount called "rate base cost" which was $800,000 less than its own figure as to present cost, violated a rule of law to petitioner's prejudice. (Civ. Prac. Act, § 1304, subd. 3.)▮

Petitioner and several other urban and interurban transportation lines in Westchester county are controlled through stock ownership by the Third Avenue Railway of New York city, and are managed and operated by interlocking directorates. The entire system had been in receivership and was reorganized shortly after 1910, and after the statute was passed which gave the Public Service Commission supervisory powers as to the securities to be issued. The reorganization and the issuance of securities was controlled by the Commission and the courts. (*People ex rel. Third Avenue R. Co.* v. *P. S. Comm.*, 203 N. Y. 299; *People ex rel. Westchester Street R. R. Co.* v. *P. S. Comm.*, 210 id. 456.) The system has met legal obstacles in connection with such efforts as it has made to adopt present-day methods of transportation. Permission for the joint operation of buses over seven of its lines was obtained only after a decision by the Court of Appeals. (*Matter of Westchester Electric R. R. Co.* v. *Maltbie*, 245 App. Div. 435; 271 N. Y. 648.) It has also been denied leave to abandon unprofitable lines. (*Matter of Westchester Electric R. R. Co.* v. *Maltbie*, 245 App. Div. 782.) It is unquestioned that trolley lines are being supplanted by newer methods of transportation, and from a practical standpoint it is difficult to fix the present value of the engineering, superintendence and interest during construction, as well as the present value of tracks, car barns, real estate incumbered thereby, and cars. The Commission has fixed the present value of the cars at slightly more than $1,600 each (about the amount paid for a medium-priced automobile). This may well be the real value, but it should be fixed after proof and not by means of an "accounting practice." A question as to the reasonableness of the valuation under consideration is raised by the fact that the same three Commissioners, a brief time earlier, found the value to be $500,000 greater. Each of the figures fixed the value as of December 31, 1930. The suggestion on the argument that economical operation required petitioner to change the old cars for new and modern ones seems fanciful and to raise the question where the purchase price would be procured. In view of the past experience of petitioner and the

present-day value of its securities and those of the parent company, it will do well if the old cars are kept in a safe condition for use by the public. This was pictured by Judge RHODES in his concurring opinion for annulment on the first appeal. " The inexorable facts are that the company has never paid any dividends and, with the apparent and probably real deficit in surplus above stated, it seems apparent that the company has demonstrated that the rates are confiscatory." (242 App. Div. 326.)

We may not fix values or rates, but may annul and remit for errors of law or where there is such a preponderance of evidence against a finding that it would be set aside if made by a jury.

I vote to annul and remit.

CRAPSER, J., concurs.